## Duvall *vs* Waggener *et al.*

ERROR TO THE RUSSELL CIRCUIT.

*Sale under execution. Mortgagor and Mortgagee. Fraud.*

JUDGE EWING delivered the Opinion of the Court.

AN execution issued on a replevin bond, against E. M. Waggener and his sureties, in favor of E. & E. Creel, endorsed for the benefit of Duvall, which was levied upon a house and lot in Columbia, as the property of E. M. Waggener, which was sold and purchased by Wm. Owens, in June 1822, at $3,610 90, the full amount of the execution and costs.   Owens was the attorney, and claimed to be the agent of Duvall in the purchase, and by endorsement on the execution, set over the purchase to him, and the execution was returned satisfied.

Prior to the emanation of the execution, Waggener had mortgaged the house and lot to Walker and Montgomery, his brother-in-laws, to indemnify them as his sureties in bank for $2000, and after the sale and purchase by Owens, the mortgage was assigned to B. F. Waggener, in consideration of his assuming on himself

DUVALL
*vs*
WAGGENER *et al.*

the responsibilities of Walker and Montgomery in the bank, and he filed his bill against his brother, E. M. Waggener, and Walker and Montgomery, who answered forthwith, and a consent decree was rendered in June, 1823, under which the house and lot was sold, and B. F. Waggener became the purchaser at $1000, and a conveyance was made to him by the commissioner. In March, 1824, Duvall filed his bill against E. M. Waggener and others, on the foregoing facts, charging evasively, the want of authority in Owens to buy in his name; also, charging fraud in the mortgage and proceedings on it; fraud in the sale, and imposition practiced upon Owens, and specifically charging, as an inducement to his purchase, a promise on the part of Waggener and the mortgagees, to release the mortgage, and praying a rescision of the sale, and payment of the money to him, or a release of the mortgage and confirmation of the title in him, and surrender of the possession, and for general relief. An amended bill charged that E. M. Waggener had acquired the title to the lot since the commencement of the suit, by purchase from a sub-purchaser, from B. F. Waggener, which E. M. Waggener by answer admitted, and proffered to surrender the same to the complainant, upon his paying $500 which he gave for the property, and all costs and expenses.

Upon the hearing, the complainant's bill was dismissed, and he has brought the case to this Court for revision.

The representatives of several of the parties originally made defendants, have not been brought before the Court. We think it unnecessary to delay the case longer for that purpose—the two Creels and Bell were only made parties, the former as assignors of the judgment, the latter as assignee from Duvall, for the mere purpose of collection, and all of them in their lifetime answered the bill acknowledging the right of the complainant.

By the purchase of property by the plaintiff's attorney under execution, and the execution ordered to be re-

Nor is it necessary for the purposes of the decree which we have determined to render, to bring the heir of Montgomery or the sureties in the replevin bond before the Court, as neither of them can be affected by it. The proof is not sufficient against the positive denial of

Walker, to sustain the alleged fraud against the mortgagees, Walker and Montgomery, to release their mortgage, or to involve them in the fraud, by which it is charged, that Owens was seduced into the purchase of the house and lot, and the sureties are not even charged with being cognizant or participant, or with having any notice of the arrangement by which the purchase was superinduced. By the levy and sale the replevin bond was satisfied, and the sureties discharged from all further responsibility upon it, and a court of equity will not, under the circumstances of this case, resuscitate the complainant's demand against them. Owens did purchase the house and lot for the full amount of the execution which issued on the bond, and the execution has been returned satisfied. He had a right to purchase either as individual or as agent, and whether he purchased in the one or the other character, or had or had not authority to set over the purchase to the complainant in satifaction of his debt, must be settled by the complainant with Owens and the Sheriff, and cannot affect the sureties, who had no knowledge of, or concern with it.

And if Owens, as the agent of the complainant, made an arrangement with the principal debtor without consulting the sureties, whereby the latter undertook to discharge the property from the mortgage of Walker and Montgomery, upon terms agreed on between him and Owens, then must his principal look to that arrangement and the purchase under it, and cannot revive his claim against the sureties.

Nor can the complainant obtain relief against Owens in this suit, upon the ground of his want of authority to purchase in his name. The allegation of want of authority charged in the bill, is vague and indefinite, and seems to be casually thrown in, and more as a makeweight, and as ancillary to the remedy sought against Waggener, than as a specific ground for relief against Owens, and from the manner in which it is made, a strong implication arises, that Owens had authority to purchase. The allegation is that "he never authorized any person to purchase said property at the *price* and on the *terms* upon which said purchase was made." A general

*Margin notes:*

Duvall
vs
Waggener et al.

turned satisfied; the judgment is discharged, and any want of authority is to be adjusted between plaintiff, his attorney, and sheriff.

No relief granted against a defendant without a prayer for it.

power to superintend the execution and purchase, at the discretion of the agent, might have been given, and yet the allegation be true, that a power was not given to purchase at the precise *price* and upon the precise *terms* at which it was made; nor could the *price* and *terms* be known until after the purchase should be made; and no prayer is made for relief against Owens. Besides, Owens was the attorney at law who recovered the judgment, and there is proof tending to the conclusion that he was the attorney in fact, authorized to purchase in the name of the complainant.

A defendant in execution being mortgagor of real estate, procuring complainant's attorney or agent to buy it, under promise to remove the incumbrance, and failing to do so, afterwards acquiring the legal title, will be compelled by the Chancellor to release it to such purchaser.

But upon the merits of the case, and against Waggener, the principal defendant and debtor, we think the complainant is entitled to some relief. He has not obtained one dollar in either money or property, for a just debt of upwards of $3,600; and if he fails to recover the house and lot, he is tricked out of all forever. It is intrinsically probable that some stratagem or device was used or inducement held out to Owens to make the purchase, otherwise it is not to be presumed that he would have bid the sum which he bid, which, subject to the mortgage, so greatly exceeded the value of the property purchased. And we think there is enough in the record to satisfy the Court, that the inducement held out was the promise of Waggener, the principal debtor, to discharge the house and lot from the mortgage of Walker and Montgomery, by the substitution of other property in its place, or otherwise; and that Owens, placing full confidence in this promise and in the ability of Waggener to accomplish it, from the previous declaration of Walker and Montgomery, his relations, with whom it is to be presumed he had some influence, that they would release, upon his substitution of other property sufficient to secure them, was induced to purchase at the price which he bid, which was the full amount of the complainant's debt and costs. And there was probably an expectation on the part of Owens, superinduced by the promise of Waggener, that he would redeem the house and lot at the expiration of two years, by the payment of the debt and interest, which he had a right to do by the laws then

in force on the sale of property under mortgage. We are brought to this conclusion by the following facts:

These promises and inducements are charged in the bill, not only against Waggener, the mortgagor, but against the mortgagees, Walker and Montgomery. Waggener denies them in the form in which they are made, but admits that he did promise Owens, as an inducement to his purchase, to procure a relinquishment of the mortgage, if the complainant "would execute to him as soon as practicable, bond, or guarantee to him the right of redemption according to the act of assembly," and that Walker and Montgomery had promised him a release, upon his substituting other property as an indemnity to them. And Walker admits in his answer that at a previous attempt at a sale, he declared in the presence of Owens, that they would release on those terms. Waggener further admits that "he did prevail on the mortgagees to assign their mortgage to his brother B. F. Waggener, on his agreeing to stand in their place, and becoming in their stead, responsible as his sureties to the bank; and that after his brother had become the purchaser of the house and lot for the debts for which he became responsible, that he did *cherish* a *hope* that he would be *willing* to *convey* to the complainant upon being *completely indemnified for all payments and liabilities.*" Besides, Owens proves the promise, not only on Waggener's part, but also on the part of the mortgagees, to release the mortgage, and without the condition of a bond or guarantee to allow a redemption in two years; but says that Waggener refused to yield the possession under his purchase, stating his intention to redeem and his right to retain possession. And Alexander Waggener proves that "it was agreed between Owens and the mortgagees, and Waggener, that if Owens would bid the full amount of the execution and allow Waggener the same right of redemption in two years, upon paying the money and interest, which said Waggener would be entitled to if the property was sold subject to the mortgage, that then and in that case, the said mortgagees would release their mortgage and let the sale take place; but in a subsequent deposition, taken at the instance of the de-

fendant, he corrects his statement in this, so far as it respects the agreement on the part of the mortgagees. Another proves, that he had rented the place from Owens, and that Waggener refused to yield possession, claiming the right to redeem in two years, and the right to retain it on that ground till the two years should expire, and upon communicating the fact to Owens, he assented to his right.

From these admissions and facts proven, it is evident that Waggener at least promised to procure a relinquishment of the mortgage, upon the terms of a right reserved to him to redeem within two years from the sale at most, to be guarantied by proper instrument of writing, to be executed in reasonable time, and perhaps upon the understanding between Owens and him at the time that the right was reserved, without an undertaking for such an instrument. But if such written guarantee was to be given and was not given, it can have no operation as we conceive, upon the rights of the parties in this case, whether the complainant or the defendant was to do the first act; for though at law this technical legal rule might have effect upon their rights, in chancery *time* is never regarded unless it is of the essence of the contract. Besides the execution of a written guarantee would have been an act of supererogation which would not have secured to the defendant any right which the statute at the time had not secured to him. For by the statute of 1821, then in force, on the sale of the mortgagor's interest in real estate mortgaged, he had a right secured to him to redeem within two years, and the *right to remain* in possession until the two years expired—and if it should be conceded that he might not have had the right to redeem under the statute, when the return of the officer did not show that the sale was made of the equity of redemption only, and *subject* to the *mortgage*, yet he was permitted to enjoy the possession undisturbed by the complainant or any other, by reason of the complainant's defalcation, and might have enjoyed the undisturbed possession until the present time, or at any rate for the full two years, had he complied with his promise to procure a release of the mortgage. Nor has the complainant

ever restricted him in the exercise of his right to redeem, and no doubt would have been gratified at any time within the two years, and even afterwards, to receive his money and interest rather than retain the house and lot, which had greatly fallen in value, had it been tendered. Whilst, therefore, he was permitted to enjoy the property, and was reaping all the benefits which the strongest guarantee in writing could confer, had he paid the mortgage debts, or otherwise procured a release of the mortgage according to his promise, instead of procuring his brother to receive an assignment of the mortgage, the property could never have been sold, nor his possession or the right of the complainant effected, nor the power of either obstructed in carrying out the contract of the parties. And *if*, even after the purchase by his brother, B. F. Waggener, instead of "cherishing a hope that he would convey to the complainant upon being completely indemnified in all payments and liabilities," it would have been much more consistent with moral and legal duty for him to have then indemnified his brother for all payments and liabilities, and procured him to make a conveyance to the complainant in fulfilment of his contract.

But as it appears by his answer to an amended bill, that he has, since the sale, acquired the title free from incumbrance, by purchase from a sub-purchaser from his brother, he now stands in a condition to do that justice which he should have done in the first instance, and which, if done, would have had the effect to vest a complete title to the house and lot in the complainant— namely, to convey the property; and as an indemnity for his being kept out of it so long, to account for the rents and waste. And this justice a Court of Chancery will require him to render, subject however, to a deduction from the rents and waste of a reasonable compensation for any necessary repairs or any lasting and valuable improvements which may have been made upon the premises, estimated according to equitable principles. The account to be taken as well while the possession remained in others as in the defendant, the account for rent to commence from the expiration of two years from

Duvall
vs
Waggener et al.

And if he have kept the possession, to surrender it and account for the rents, (after two years from the date of the sale, within which time it was redeemable under the stat. of 1821) and account also for waste, deducting from the rents and waste, if any, the value of lasting and valuable improvements put on the property.

the purchase by Owens, and the account for waste to commence from the sale.

Had the title remained out of him, as the foreclosure and sale under the mortgage was the effect of his failing to procure a release of the mortgage, he would unquestionably have been required to refund to the complainant, the consideration of his purchase as his just indemnity for the loss of the property produced by his defalcation. But having acquired a title to the property, he may be required to convey it and account for rents and waste, and can only escape from this responsibility upon the alternative of refunding the debt and interest, which he may yet do if he so elects. As the conveyance of the title and payment for rent and waste may be most to his advantage, he cannot complain; and as the complainant, by such a decree, will get all he would have gotten, in case the release had been procured, and will, in the rents, be remunerated for being kept out of possession, he can, as complainant, equitably ask no more.

The decree of the Circuit Court must be reversed, and cause remanded, that the defendant be allowed to elect whether he will pay the debt and interest, or surrender the house and lot and pay rent and waste as directed; and if he fails to elect, or fails to pay within reasonable time to be allowed him, an account is to be taken of rents, waste, repairs and improvements, as directed in this opinion, and a decree rendered as well for the balance of the rents and waste, if any, as for a conveyance of the house and lot.

Decree reversed and cause remanded.

*Harlan* for plaintiff; *Monroe* for defendants.