## CHENEY v. BILBY.

(Circuit Court of Appeals, Eighth Circuit.    April 13, 1896.)

No. 708.

1. EQUITY—FORFEITURES—INEQUITABLE CONDUCT—INTEREST.

Equity abhors forfeitures, and will not concern itself to make good the loss of interest to one who refused the principal in the hope that he could enforce, upon purely technical grounds, a forfeiture of lands sold and all payments made thereon, under the terms of a harsh and unconscionable contract.

2. TENDER OF PAYMENT—PLACE OF TENDER—SUBSEQUENT INTEREST.

Failure of the holder of notes payable at a particular place to have them at such place on the day they become due, so that the agent to make the collection refuses to receive the amount when tendered, deprives the holder of any right to subsequent interest, where it does not appear that the debtor has realized any interest on the money tendered.

3. SAME—KEEPING TENDER GOOD.

In order to stop interest, it is not necessary that one making a tender should set the money aside, and hold it continuously subject to the order of the creditor, but he may use it as his own, and is only under obligation to be ready at all times to pay the debt in current money when requested.    Curtiss v. Greenbanks, 24 Vt. 536, followed.

4. VENDOR AND VENDEE — CONTRACT OF SALE — STIPULATION AGAINST ASSIGNMENT.

Where all the vendee's engagements have been promptly fulfilled, and the final payments made or tendered, the vendor cannot refuse to make a deed, as required by the contract, on the ground that the vendee assigned the contract without his consent, contrary to express stipulation. Such a stipulation ceases to operate when all the vendee's engagements are performed; and, even if an assignment has been made previous to final performance, the vendor cannot object thereto, after failing to do so at the time of the assignment, or on receiving notice of it.    Wagner v. Cheney, 20 N. W. 222, 16 Neb. 202, followed.

5. SPECIFIC PERFORMANCE—PARTIES—ASSIGNMENT OF CONTRACT.

Where the suit is brought by an assignee of the contract, defendant cannot object that the assignment is not evidenced by a formal written instrument or deed, and that the assignor should therefore be a party, where the fact of the assignment is asserted by the parties thereto, upon the record, in a mode which will estop them from asserting the contrary, as against the defendant.

6. TENDER—BRINGING MONEY INTO COURT.

It is sufficient that a tender is made in the bill, with an offer to bring the money into court whenever the court directs; and it is not necessary that the money shall be brought into court on the filing of the bill.

Appeal from the Circuit Court of the United States for the District of Nebraska.

This suit was begun on the 2d day of December, 1892, by John S. Bilby, the appellee, against Prentiss D. Cheney, the appellant, and arises out of the following contract:

"This indenture, made this 2d day of May, in the year of our Lord one thousand eight hundred and eighty-one, between Prentiss D. Cheney, of Jerseyville, Jersey county, Illinois, party of the first part, and John A. Wisherd, of Nodaway county, Missouri, party of the second part, witnesseth:

"That, in consideration of the stipulations herein contained and the payments to be made as herein specified, the first party doth by these presents demise and let to the second party the possession and use of the land herein mentioned to the said second party, said premises situate and being in the county of Gage, in the state of Nebraska, known and described as follows, to wit:

All of section one, town five, range seven, being.................. 646.28
All of section twenty-four, town six, range seven, being.......... 640.
All of section nine, town six, range eight, being.................. 640.
Northeast quarter sect. five, town five, range seven, being........ 164.42
Fractional west half sect. six, town five, range eight, being....... 124.51

    In acres a total of.....................................2,215.21

"The sum agreed upon for the possession, use, occupancy, and control of said land is $2,792.$^{37}/_{100}$ yearly, which is represented and included in the notes executed by said second party described herein, and also the whole amount of the taxes that are or may be assessed against said land. The purchase price of said land is fifteen thousand five hundred and six and $^{47}/_{100}$ dollars, of which payment has been made of four hundred and twelve and $^{55}/_{100}$ dollars, at the execution of this contract. The balance is to be paid, without notice or demand therefor, in ten annual payments, at the times specified in eighteen certain promissory notes, of even date herewith, signed by John A. Wisherd, payable to the order of P. D. Cheney; one note being for 1,886.$^{73}/_{100}$ dollars, due three years after date; one note being for 1,886.$^{73}/_{100}$ dollars, due four years after date; one note being for 1,886.$^{73}/_{100}$, due five years after date; and five other notes, for 1,886.$^{73}/_{100}$ each, due in six, seven, eight, nine, and ten years after date, which eight are the principal notes, the other ten notes being for the yearly interest, viz.: First note, $905.$^{63}/_{100}$; second note, $905.$^{63}/_{100}$; third note, $905.$^{63}/_{100}$; fourth note, $792.$^{43}/_{100}$; fifth note, $679.$^{23}/_{100}$; sixth note, $566.$^{03}/_{100}$; seventh note, $452.$^{83}/_{100}$; eighth note, $339.$^{63}/_{100}$; ninth note, $226.$^{43}/_{100}$; tenth note, $113.$^{23}/_{100}$,—due consecutively in one, two, three, four, five, six, seven, eight, nine, and ten years after date; all payable at the office of Russell & Holmes, in Tecumseh, Neb., without interest, before due, and with ten per cent. per annum after maturity. And the said second party, in consideration of this agreement, hereby agrees to make punctual payment of the above sums of principal and interest as each of the same respectively becomes due, and will also regularly and seasonably pay all the taxes and assessments against said land. Wisherd contracts and agrees to break one-third of each of the five tracts described, in season of 1881. Wisherd contracts and agrees to build six dwelling houses, at proper points, within one year from date, which dwelling houses shall be good and suitable for dwelling purposes, and to cost not less than $250 each. Cheney is to pay taxes of 1880, and to warrant against all former years taxes. Wisherd is to pay taxes of 1881, and all subsequent years. In case the second party, his legal representatives or assigns, shall pay the several sums of money aforesaid punctually and at the times above limited, and shall strictly perform all and singular the agreements and stipulations aforesaid after their true tenor and intent, then the said first party covenant and agree to make and execute unto the said second party, his heirs or assigns (upon request and the surrender of this contract), a deed conveying said land in fee simple, with the ordinary covenants of warranty, reserving and excepting the right of way that may be demanded for public use for railways or common roads; and it is hereby agreed and covenanted by the parties hereto that time and punctuality are material and essential ingredients in this contract.

"And in case the second party shall fail to pay the taxes, or if the land shall be sold for taxes, or if said second party shall fail to make the payments of money for principal or interest, or to make improvements as herein agreed, upon the terms and at the times herein limited, and to perform and complete all and each of the payments, agreements, and stipulations herein mentioned, strictly and literally, without any failure or default, then this contract, so far as it may bind said first party, shall become null and void, and all the rights and interests hereby created or then existing in favor of the said party, or derived from him, shall utterly cease and determine; and the right of possession and all equitable and legal interests in the premises shall revert to and revest in said first party, without any declaration or forfeiture, or any act of re-entry, or any other act of said first party to be performed, and without any right of said second party of reclamation or compensation for moneys paid or services performed. And, in case of the forfeiture or the annulling of this contract, the said second party shall still be bound and

liable to pay all taxes then due or assessed against said land; also, all installments of principal or interest that may then be due on this contract to be regarded and considered as rent for the use of said land; also, no fixtures or improvements, temporary or permanent, shall be removed from said land. And the said first party shall have the right, immediately upon the failure of the second party, to comply with the stipulations herein, to enter upon the land aforesaid, and take immediate possession thereof, together with all the fixtures, privileges, and appurtenances thereon or in any wise thereunto belonging or appertaining. And the said second party hereby covenants and agrees to surrender unto the said first party, or his order or his assigns, the said land and appurtenances without delay or hindrance; and no court shall relieve the said second party from a failure to comply strictly and literally with this contract, and this instrument shall not be regarded or construed as color of title. No modification or change of this contract can be made except by entry hereon in writing, signed by both parties. An oversight or omission of the first party to take notice of any default of the second party shall not be deemed a waiver of their right so to do at any time thereafter. And it is further stipulated that no assignment of the premises or of this contract shall be valid unless with the written consent of the first party, and by the indorsement of the assignment hereon.

"Time is hereby declared by the parties hereto to be the essence of this contract, and a failure on the part of the second party to make the payments mentioned, to do and perform all the covenants, to comply with all the agreements herein expressed, and by him agreed to be performed strictly according to the terms, boundaries, and limits of the time herein mentioned, or either or any of them, fully and completely, shall immediately work forfeiture of all the right and claim of the said party of the second part to have a conveyance of the land herein mentioned. And, in case of default, the said second party binds himself and representatives to give up immediate possession of all said tract of land, whenever a demand is made therefor by the said party of the first part or their legal representatives. And upon the non-performance of the covenants herein mentioned, or a failure to make the payments as herein specified, or any of them, at the time promised, all the rights and privileges provided in this contract giving to said second party the right to purchase the land mentioned shall immediately terminate. The rights of the second party hereunder shall be the rights of a tenant, and he shall hold the land under this contract as a lease, and he shall be liable and subject as a tenant under the statute regulating the relations between landlord and tenant; and, in case of default, the first party may enforce the provisions of this contract, and also recover possession of the land, with all the fixtures, privileges, crops, and appurtenances thereon; and, in case of default the action of forcible detainer shall lie against said party of the second part or his legal representatives herein.

"In testimony whereof, the said party of the first part has signed these presents in duplicate, and the second party has hereunto set his signature, the day of the date hereof.            John A. Wisherd."

The bill sets out this contract, and avers performance and tender of performance by Wisherd and the complainant of all the covenants and stipulations of the same; pleads specially the tender of payment of all of the purchase-money notes at their maturity, and the tender of $19,512 to pay the last notes, which matured May 2, 1891, and the principal of the other unpaid notes, which matured prior to that date; offers to bring into court, as the court may direct, "all moneys due the said Cheney by said contract and notes, and offers to do equity in every respect as to this honorable court shall seem just"; avers "that on the 13th day of February, 1889, your orator, for a valuable consideration, purchased the said equity of the said Wisherd in said land, and obtained a quitclaim deed therefor, and also an assignment of the said contract from the said Wisherd, and undertook and agreed to perform all and singular the obligations and payments of the money due the said Cheney from the said Wisherd under said contract of purchase"; alleges that on the 29th day of May, 1891, Cheney brought actions of ejectment to recover the possession of the land; and prays that he may be enjoined from prosecuting these actions, and that Cheney may be decreed to make complainant a deed for the land.

The answer admits the execution of the contract, and that Cheney agreed to sell Wisherd the land in controversy on the terms specified in the contract; alleges that default was made in the payment of each and every one of the purchase-money notes which matured on and after May 2, 1884, and "that, by reason of said defaults, said contract became forfeited, null, and void, at the option of this respondent, Prentiss D. Cheney; that, immediately after each default in said payments by said John A. Wisherd, this respondent notified the said Wisherd that he elected to declare said contract void, and did declare said contract forfeited and void; * * * that this respondent does now declare said contract forfeited, null, and void"; and this declaration is many times repeated in the answer; alleges that "Wisherd and said Bilby allowed said land to be sold for taxes on the 6th day of November, 1893, at which time the said premises were duly sold for taxes for the years of 1891 and 1892," and that, by reason thereof, the contract became null and void; avers that the forfeiture of Wisherd's rights under the contract was well "known to the complainant, John S. Bilby, for a long time prior to the pretended purchase by him and the assignment of said contract, and of the pretended purchase by him of the alleged interest of the said John A. Wisherd in said land, and were well and fully known by John S. Bilby long prior to the 13th day of February, 1889"; and alleges that, "by reason of such knowledge, the said John S. Bilby, complainant, is estopped and ought not to have and maintain his alleged cause of action in his said bill of complaint set forth, and, by reason of such estoppel, is not entitled to the relief prayed for in his said bill of complaint: * * * and this respondent alleges that he has never at any time consented to the assignment of the premises or of said contract to the said complainant, John S. Bilby, or any other person, and that if said contract has been assigned, or the said Wisherd's rights thereunder, by the said John A. Wisherd, to the said John S. Bilby or other person, it has been without the consent of this respondent"; and concludes with a prayer that the "contract shall be declared forfeited, null, and void."

A year after filing the first answer, an amended answer was filed, which answered the averments of the bill in relation to the tender of the purchase money as follows: "This respondent, further answering, says that said complainant ought not to have or maintain his said plea of tender of payment of the amount due under said contract at the time said payments became due, for the reason that said complainant did not and has not kept good said pretended and alleged payments, and did not and has not deposited said sums in any place or bank where this defendant could secure the same upon application therefor, and has not set aside, and did not keep set aside, or separate and distinct, moneys or funds at any time or any place where this defendant could secure the same in satisfaction of said payments so due and owing; and said complainant has not brought the amount of said alleged tenders, nor the amount of said payments so past due, into court, and deposited the same in court or elsewhere, for the use and benefit of this defendant, or where this defendant might or could secure the same, and has made no tender or profert thereof of said sum, or any sum in this court or elsewhere, for the use and benefit of this defendant." The amended answer also sets up a claim for $521.95 paid to redeem the land from a sale for taxes for the year 1892, and concludes with a prayer that the contract "be declared forfeited, null, and void." The court below found the issues of fact in favor of the complainant, and rendered a decree as prayed for in the bill. The decree required the complainant, within 30 days from the date thereof, to pay to Cheney, or into court for his use, the $19,512, due on the notes, and $561.70, the amount of certain taxes on the land paid by Cheney, and these sums were deposited in court accordingly.

Cheney denied that Wisherd tendered payment of the notes which matured May 2, 1884, and on May 30, 1884, wrote Russell & Holmes the following letter:

"Atchison, Kansas, May 30, 1884.

"Messrs. Russell & Holmes—Gents: Yours of 28th recd., saying that you have no word from J. A. Wisherd. There was due from him the first part of this month some $2,800, on a land contract payable at your office. If you do hear from him, and he offers to pay, I authorize and request you to say to him for me that I will not take the money; that his contract terminated

by his failure to pay or offer payment when due; and I do not and shall not recognize the contract as binding me to convey the land. I do not know his address, or I would write to him. The payment of the money would have been a great convenience and accommodation and benefit to me during the financial panic. I propose to know from the highest law authority whether I am entitled to the benefits of the contract or not.

"Yours, truly,        P. D. Cheney."

Cheney thereupon declared the contract forfeited, and brought his action of ejectment to recover possession of the land, and wrote Wisherd the following letter:

"P. D. Cheney, Jerseyville, Illinois.
             "June 16th, 1884.

"John A. Wisherd, Esq.—Dear Sir: My contract of May 2d, 1881, to sell you:

All section................................................ 1.   5.   7.
  "  ................................................24.   6.   7.
  "  ................................................ 9.   6.   8.
N. W. $\frac{1}{4}$..................................................... 5.   5.   7.
Fractional W. $\frac{1}{2}$.......................................... 6.   5.   8.
—a total of 2,215 $\frac{37}{100}$ acres, in Gage county, Nebraska, became null and void, and was terminated by your failure to pay the installments due May 2d, 1884,

1 of ............................................................. $1,886.73
1 of .............................................................   905.63

"I will return the unpaid promissory notes on demand, or will deposit them for your use and benefit with any third person you will name. I also ask and demand possession of the land, and the stipulated sum of $2,792.37 as the yearly rent of same.

"Yours, truly,        P. D. Cheney."

To this letter, Wisherd replied as follows:

           "Omaha, Nebraska, July 9, 1884.

"P. D. Cheney, Esqr., Jerseyville, Ills.—Dear Sir: Yours of June 19th received, and contents noted, and in reply I will say that when my notes became due to you May 2d, 1884, at the office of Russell & Holmes, Tecumseh, Neb., I sent my brother there, prepared to pay them, and instructed to do so, but the notes were not there. I have since that time been there myself, prepared to pay them, and offered to do so, and have been ready every day since they were due, and am ready now, to pay them, if you will notify me when they will be there at Russell & Holmes' office. There is where I shall expect to find each note as it becomes due, and, on the day it becomes due, you can get your money for each and every one of them. Until that time I have no use for the notes, unless you should prefer to take all your money due you on principal notes at a reasonable discount, and make me a deed now. In that event I could and would pay it all to you, but that is optional with you. If you should wish to do anything of the kind, name the discount you would be willing to give.

"Very respectfully yours,      John A. Wisherd.
"Nodaway Co., Dawson, Mo."

On July 14, 1884, Cheney wrote Wisherd as follows:

"P. D. Cheney, Jerseyville, Illinois.
             "July 14th, 1884.

"John A. Wisherd, Dawson, Nodaway Co., Mo.—Dear Sir: Inclosed I return you 16 notes, all dated May 2d, 1881, given to me by you, as a part of the land contract of same date, for the sale and purchase of:

All section ................................................ 1.   5.   7.
  "  ................................................24.   6.   7.
  "  ................................................ 9.   6.   8.
N. E. $\frac{1}{4}$.................................................... 5.   5.   7.
Fract'l W. $\frac{1}{2}$.............................................. 6.   5.   8.
—being 2,215 $\frac{21}{100}$ acres in Gage county, Nebraska.

"As you know, the contract of sale became null and void, was terminated and ended, by your failure to comply with its terms. I have been unable until now to know with certainty your proper address, or I would have returned the notes sooner.

"Yours, truly, P. D. Cheney."

To this letter, Wisherd replied as follows:

"Dawson, Mo., July 21st, 1884.

"P. D. Cheney, Esqr., Jerseyville, Ills.—Dear Sir: Yours containing my notes given to you for the purchase money of Gage Co., Neb., land received. I herewith return them to you. I will give you the money for the two notes which were due May 2nd, 1884, just as soon as they are presented to me for payment. The other notes are not due yet, and, until they are due, I have no use for them.

"Very respectfully yours, John A. Wisherd.

"Nodaway Co., Dawson, Mo."

Other correspondence and facts appear in the opinion. Cheney brought the case into this court by appeal.

Charles E. Magoon, for appellant.

James W. Hamilton and Samuel Maxwell (George B. Lake and Henry E. Maxwell were with them on the brief), for appellee.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

CALDWELL, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The transaction between Cheney and Wisherd was the very simple one of the sale by the former to the latter, mostly on credit, of a tract of wild land. As simple in itself as the transaction was, the written instrument expressing it is an extremely voluminous document, imposing on the purchaser numerous and unusual, stringent, and oppressive conditions, all of which are required to be "strictly and literally" performed by the purchaser, on pain of forfeiting the land, and all improvements, fixtures thereon, and all the purchase money paid, and all that may be due when the forfeiture is declared, and also the crops that may then be growing on the land. Time is twice declared to be "the essence of this contract," in respect of every one of its numerous provisions, and it is further declared that "no court shall relieve the said second party from a failure to comply strictly and literally with this contract," and that "an oversight or omission of the first party to take notice of any default of the second party shall not be deemed a waiver of the right to do so at any time thereafter." In the number, severity, and stringency of its provisions as applied to the purchaser, the contract is without a precedent in our judicial experience outside of the cases in which similar contracts made by Cheney with other persons have given rise to lawsuits, and have been made the subject, to a greater or less extent, of judicial consideration. We cite some of these cases: Wagner v. Cheney, 16 Neb. 202, 20 N. W. 222; Robinson v. Cheney, 17 Neb. 673, 24 N. W. 378; Roberts v. Cheney, 17 Neb. 681, 24 N. W. 382; Ballard v. Cheney, 19 Neb. 58, 26 N. W. 587; Svaboda v. Cheney, 28 Fed. 500; Cheney v. Bacon, 1 C. C. A. 244, 49 Fed. 305; Cheney v. Libby, 134 U. S. 68, 10 Sup. Ct. 498. However harsh and exacting

the contract may be, Cheney is entitled to the full benefit of its provisions, and we have only called attention to some of them because they disclose a motive and afford an explanation for Cheney's subsequent conduct.

We will proceed to consider the several grounds upon which Cheney rests his defense to the bill for specific performance. The first ground relied on in the answer is that the contract is "forfeited, null, and void by reason of the nonpayment of the notes given for the purchase money as they severally matured." These notes, by the terms of the contract and by their own terms, were payable at the office of Russell & Holmes, Tecumseh, Neb. Wisherd paid, as part of the purchase price for the land, $412.55, at the date of the execution of the contract; and he also paid at maturity the first two interest notes, due, respectively, May 2, 1882, and May 2, 1883, each for the sum of $905.63. Before May 2, 1884, the date of the maturity of the first principal and the third interest note, Wisherd had placed improvements on the land valued at $20,000. When the last-mentioned notes matured, Wisherd tendered payment of the same at the office of Russell & Holmes, at Tecumseh, Neb., where they were payable; but Russell & Holmes, not having the notes, declined to receive the money. Cheney denied that a legal tender had been made of the money due on these notes, declared the contract forfeited, and instituted an action of ejectment to recover the land. This ejectment suit was tried and decided against Cheney in the circuit court of the United States for the district of Nebraska on the 5th day of February, 1887. The case was then taken on writ of error by Cheney to the supreme court of the United States, where it was pending until the 5th day of January, 1891, when it was dismissed on Cheney's motion. By this action the judgment in this ejectment suit became final, and is conclusive against the claim of Cheney that Wisherd had forfeited his rights under the contract by failing to tender payment of the notes which matured May 2, 1884. From the time Cheney brought the action of ejectment, in 1884, to enforce the alleged forfeiture and recover the land, down to the 17th of May, 1890, he asserted that due tender of payment of the notes which matured May 2, 1884, had not been made, and that the contract was null and void. He refused to accept payment of the other purchase-money notes as they matured, or to otherwise recognize the contract as in force. Cheney's action rendered it manifest that it was not payment of the notes he desired, but a forfeiture of the contract. Wisherd, perceiving that it was Cheney's purpose to enforce "strictly and literally" the sweeping forfeitures provided for in the contract if the slightest ground was afforded him for so doing, was put upon his guard, and was at great pains and considerable expense to comply strictly and literally with the terms of the contract. Notwithstanding Cheney's persistent declaration that the contract was forfeited and null and void, Wisherd continued to tender payment of the other purchase-money notes as they matured, at the place where they were made payable. On the 3d of March, 1890, the supreme court of the United States decided the case of Cheney (the same Cheney who is appellant in this case) v. Libby, 134

U. S. 68, 10 Sup. Ct. 498. That was a suit to compel specific performance by Cheney of a written contract similar to the one in suit, for the sale by him to Libby of land in Nebraska. The facts upon which the complainant in that case grounded his claim for specific performance, so far as they relate to the action of Cheney, bear a strong analogy to the facts in this case. Fourteen days after the supreme court of the United States handed down its opinion in that case, Cheney abandoned his claim to a forfeiture growing out of the alleged nonpayment of any of the notes which matured prior to May 17, 1890, as will be seen by the following letters, written by him on that day:

"Tecumseh National Bank, Successor to Bank of Russell & Holmes.

"Tecumseh, Neb., May 17, 1890.

"C. A. Holmes, Esq., Prest. Tecumseh, Neb.—Dear Sir: Herewith I hand you for colln. & my cr. 14 past-due notes of J. A. Wisherd, all dated May 2/81, viz. [here follows a particular description of each note]; all drawing ten per cent. interest after due. If Mr. Wisherd will pay same, you will please receive payment therefor for me. Mr. Wisherd to pay the full amount of principal and ten per cent. interest on each of the 14 notes, according to their terms. You will not receive any part payment on the notes, or on any of them. I require full payment of all the notes.

"Yours, truly, P. D. Cheney, of Jerseyville, Ill."

On the same day he wrote the following letter to Wisherd:

"Tecumseh National Bank, Successor to Bank of Russell & Holmes.

"Tecumseh, Neb., May 17, 1890.

"John A. Wisherd, Esq., Adams, Neb.—Dear Sir: You are hereby notified that I have this day left at this bank your 14 past-due notes, which you can get by paying the amount due thereon within a reasonable time.

"Yours, truly, P. D. Cheney."

Within a reasonable time after the receipt of this letter, Wisherd caused to be tendered the principal sum on the 14 past-due notes. Interest thereon after maturity was not included, because payment of the notes had been tendered at the maturity of each. Cheney was advised of this tender by the following letter from his agent:

"Tecumseh National Bank, Successor to Bank of Russell & Holmes.

"Tecumseh, Neb., May 29, 1890.

"P. D. Cheney, Esq., Jerseyville, Ill.—Dear Sir: At 4 o'clock this afternoon, the cashier of the First National Bank of Lincoln, Neb., called at this bank, and offered to pay the 14 notes of J. A. Wisherd, which you left here for collection May 17, 1890; that is, he made a tender of $17,512.00, and demanded the notes, claiming that was the amount Mr. Wisherd instructed him to tender, and to pay the same upon surrender of the notes. As the amount was not sufficient to cover the interest and principal, we declined to surrender the notes or accept the money in payment of them, and hold the notes subject to your further instructions.

"Yours, truly, C. A. Holmes, Pt."

The next and last notes fell due on the 2d of May, 1891; and on that day the complainant caused to be tendered, at the place where the notes were payable, the amount of the notes which matured on that day, and also the principal of the notes which had previously matured, and payment of which had been tendered as they matured; the whole sum tendered amounting to $19,512. The response of Cheney's agent to this tender was as follows:

"Tecumseh National Bank, Successor to Bank of Russell & Holmes.

"Tecumseh, Neb., May 2d, 1891.

"O. Callihan, Esq., Cashier—Dear Sir: We decline to accept the tender this day made by you of $19,512.00, for J. A. Wisherd, to pay certain notes given to P. D. Cheney under contract for sale of lands, for the reason that we are not authorized by P. D. Cheney to accept the money, nor have we the notes in our possession, nor the deed to the premises for which notes are claimed to have been given.

"Respectfully,                              Russell & Holmes,

"By C. A. Holmes."

· On the same day, the bank wrote Cheney as follows:

"Tecumseh National Bank, Successor to Bank of Russell & Holmes.

"Tecumseh, Neb., May 2d, 1891.

"P. D. Cheney, Esq., Jerseyville, Ill.—Dear Sir: The cashier of the First Nat'l Bank of Lincoln, Neb., has this day made a tender of ($19,512.00) nineteen thousand five hundred and twelve dollars for J. A. Wisherd, to pay certain notes described in a contract dated May 2d, 1881, between you and said Wisherd; demanded the notes and a deed to the lands described in the contract. The tender and demand was made to me as one of the firm of Russell & Holmes, and also as an officer of this bank.

"Yours, truly,                              C. A. Holmes, Pt."

Cheney refused to accept this tender, because it did not include interest on the overdue notes, payment of which had been tendered at their maturity, and on the 6th of May, 1891, again declared the contract forfeited, null, and void, and again sent the notes to Wisherd, and on the 29th of the same month instituted four suits in ejectment to recover the land.

It would serve no useful purpose to set out at length the evidence showing that payment of all the notes was tendered at their maturity at the place where they were made payable. It is enough to say that we find this to be the fact from a careful reading of the evidence. If the fact was doubtful, we should, according to a well-settled rule, resolve the doubt in favor of the findings of the lower court.

In Fitchett v. Blows (present term) 74 Fed. 47, Judge Sanborn, speaking for the court, said:

"When the court below has considered conflicting evidence, and made its finding and decree thereon, they must be taken to be presumptively correct; and unless an obvious error has intervened in the application of the law, or some serious or important mistake has been made in the consideration of the evidence, the decree should be permitted to stand."

Warren v. Burt, 12 U. S. App. 591, 7 C. C. A. 105, and 58 Fed. 101; Paxon v. Brown, 27 U. S. App. 49, 10 C. C. A. 135, and 61 Fed. 874; Stuart v. Hayden, 18 C. C. A. 618, 72 Fed. 402; Kimberly v. Arms, 129 U. S. 512, 9 Sup. Ct. 355; Evans v. Bank, 141 U. S. 107, 11 Sup. Ct. 885; Furrer v. Ferris, 145 U. S. 132, 12 Sup. Ct. 821.

If this last claim of forfeiture relied on by Cheney is well founded, he is entitled to the land, with all improvements, fixtures, and growing crops, and to the purchase money and taxes already paid, and, in addition thereto, he is entitled to collect the whole of the unpaid purchase money; the contract providing that, in case of forfeiture, the purchaser shall be bound and liable to pay "all installments of principal or interest that may then be due," and they were all due at the date of this alleged forfeiture. It will be perceived, there-

fore, that the determination of the question whether Cheney was entitled to interest upon notes payment of which had been duly tendered involves much more than the sum of that interest. When Cheney abandoned his claim to the first alleged forfeiture, and notified Wisherd that he was willing to accept payment of the past-due notes, it was Wisherd's legal duty to pay or tender payment of the same within a reasonable time. He made a tender of the principal of the notes within a reasonable time, and renewed that tender at the maturity of the last notes, but in neither instance did he tender interest on the notes after their maturity, claiming that he was not liable therefor, by reason of having tendered payment of the notes at their maturity. If he was mistaken in this claim, then he was in default; and, by the terms of the contract, Cheney had a right to declare the forfeiture, which he did on the 6th of May, 1891, and is entitled to recover, at law, the land and improvements and the whole of the purchase money, with interest.

In Cheney v. Libby, 134 U. S. 68, 73, 10 Sup. Ct. 498, the supreme court of the United States said:

"But it is quite apparent from the evidence that Cheney, in 1885, indulged the hope that he could bring about a forfeiture of the contract for noncompliance on the part of Libby with its provisions, and that he would, in that or some other way, get back the land."

In this case it is apparent that the stringent clauses of forfeiture in this contract were put there by Cheney, with the deliberate and fixed purpose of availing himself of them as soon as it would profit him to do so, and there was the slightest default upon which to predicate a claim of forfeiture. Accordingly, as soon as Wisherd had placed $20,000 worth of improvements on the land, he declared the contract forfeited, and brought suit for the land. It is now conclusively settled that this claim of forfeiture was false and unfounded, but it took six years to demonstrate this fact. During all that time the burden was imposed on Wisherd and the complainant of raising money to pay, or to tender payment, of the notes given for the land, in the face of Cheney's continued declaration to the public that the contract was forfeited, and the land his. Cheney's conduct and attitude multiplied the already heavy burdens of an unconscionable contract. His declaration that the contract was forfeited, his denial of Wisherd's right to the land, and his bringing the suit to recover it, necessarily impaired Wisherd's credit, and made it more difficult and burdensome for him to raise the money to pay, or tender payment, of the notes as they matured. It is a maxim that a man must be held to have contemplated the necessary result of his action. Cheney must have known how embarrassing and burdensome his action was to Wisherd. He evidently hoped it would utterly destroy his credit, and put it out of his power to raise money to pay or tender payment, of the purchase-money notes as they matured; for while he had, in 1884, declared the contract forfeited, and brought suit for the land, and was refusing to accept payment of the notes, he, nevertheless, was keeping a close watch to see whether Wisherd tendered payment of the notes at the appointed time and place, intending, if there was the slightest failure to comply "liter-

ally" with the contract in this regard, to make such failure a distinct and additional ·ground of forfeiture; and, under one pretense and another, he did declare a forfeiture at each recurring period of payment.

In Svaboda v. Cheney, 28 Fed. 503, Mr. Justice Brewer, then circuit judge, said:

"Where there has been, as in this case, part performance, and a forfeiture of all that has been paid and done is insisted upon, a court of equity instinctively turns to the party insisting upon the forfeiture, and inquires whether his conduct fails in the slightest degree. And in this it is not limited to the mere letter of the contract. There are often unwritten obligations which, if disregarded, justify a refusal of the claim of forfeiture. And the more inequitable the demand, the grosser the wrong in insisting upon a forfeiture, the more closely will a court scrutinize the conduct, and the smaller the departure from written or unwritten obligations which will be deemed sufficient to justify a refusal of the forfeiture."

Cheney was entitled to the benefit of his contract, however harsh and unconscionable its provisions; but he had no right to base an unfounded or groundless claim of forfeiture upon it, in the hope of thereby bringing about a forfeiture, or the necessary tendency of which was to make performance more difficult or the contract less useful or valuable to the purchaser. The language of Cockburn, C. J., in Frost v. Knight, L. R. 7 Exch. 111, 114, is appropriate here. The learned chief justice said:

"The promisee has an inchoate right to the performance of the bargain, which becomes complete when the time for performance has arrived. In the meantime, he has a right to have the contract kept open as a subsisting and effective contract. Its unimpaired and unimpeached efficacy may be essential to his interests. His rights acquired under it may be dealt with by him in various ways, for his benefit and advantage. Of all such advantages, the repudiation of the contract by the other party, and the announcement that it never will be fulfilled, must, of course, deprive him."

Upon the soundest principles of equity and fair dealing, Cheney is estopped, on the facts of this case, from claiming interest on the notes after tender of payment. To hold that he was entitled to interest on the money tendered would, as we have seen, be tantamount to giving him both the land and the whole of the purchase money. This would be giving one a princely reward for his own misconduct. Equity abhors forfeitures, and will not concern itself to make good the loss of interest to one who refused the principal in the hope that he could enforce, upon purely technical grounds, a forfeiture so harsh and sweeping in its character as to shock the moral sense. When he refused payment of the principal of the notes, and, in the hope of winning a great stake, asserted a conscienceless forfeiture, which he could not maintain, even in a court of law, he put the interest on the money tendered to the hazard. He chanced it, and lost.

The case of Hart v. Brand, 1 A. K. Marsh. 159, 161, fully supports our conclusion. That was a suit to compel the specific performance of a contract to convey land; and the seller's conduct and defense were very much the same as that of the appellant in this case, as will appear from reading the full report of the case. On the subject of interest the court said:

"With respect to interest: No proposition can be more clear, that if the purchaser were really and bona fide prepared to make payment, and intended to do so, free from all shuffling, equivocation, and technical quibble, and the vendor has ever since evinced a determination not to perform the contract, if possible, having never given notice to the vendee when to attend on the premises and receive possession, that he is not entitled to interest. In other words, that one holding himself in readiness to pay, and the other refusing to do what the contract enjoined upon him, ought to subject the latter to the loss of interest, and not the former. The wrong was with him, and he cannot charge the effect to the other. And, as to cost, it is equally clear that the decree is correct. Why the incurment of cost? Because the benefit of the contract could not be otherwise obtained. This is demonstrable, not only from the other evidence in the cause, but from the answer also. To have tendered the money or demanded possession under the circumstances would have been an idle show of form and ceremony. If the defendant intended to comply, by receiving the money and delivering the land, why did he not rest his defense as to the cost upon this ground, without resorting to points evidently for a different purpose? The real object was clearly to get clear of the bargain; and the next, to secure interest and cost. It is impossible not to perceive, from the whole evidence, that this was the object; and, if possible, to make the experiment at the expense of the purchaser, upon misapplied rules of rigid technical pleading."

Independently of the misconduct of Cheney, upon the well-settled rule, he is not entitled to interest upon the money tendered.

A case precisely in point is Ward v. Smith, 7 Wall. 447, where the court said:

"It is undoubtedly true that the designation of the place of payment in the bonds imported a stipulation that their holder should have them at the bank when due, to receive payment, and that the obligors would produce there the funds to pay them. It was inserted for the mutual convenience of the parties. And it is the general usage in such cases for the holder of the instrument to lodge it with the bank for collection, and the party bound for its payment can call there and take it up. If the instrument be not there lodged, and the obligor is there at its maturity, with the necessary funds to pay it, he so far satisfies the contract that he cannot be made responsible for any future damages, either as costs of suit or interest, for delay."

In Cheney v. Libby, supra, the court held:

"The defendant [Cheney] is not entitled to interest after the respective tenders were made, because it does not appear that the plaintiff has, since the tenders, realized any interest upon the moneys left by him for Cheney at the Bank of Russell & Holmes."

Neither Wisherd nor the complainant realized any interest on the money tendered.

In Davis v. Parker, 14 Allen, 94, 104, the supreme judicial court of Massachusetts say:

"After a tender and refusal, the vendor is not entitled to interest, unless he can show that the purchaser has made use of the money, or gained some advantage from it. 2 Sugd. Vend. 793. No such evidence has been offered in this case."

In Peugh v. Davis, 113 U. S. 542, 5 Sup. Ct. 622, the supreme court said:

"Nothing hindered during all this time that he should pay his money; and if, as he alleges, Davis denied his right to do so, then he should have made a regular and lawful tender of the amount due. If he had done so, the interest would have ceased to run against him, and the amount that he is now required to pay would have been diminished by more than one-half."

It is objected against the sufficiency of the tender to stop interest that Wisherd and the complainant did not set aside and hold subject to the order of Cheney the money tendered. This objection was made in Curtiss v. Greenbanks, 24 Vt. 536, 540; and, answering it, the court said:

"It has also been objected that this tender is of no avail, from the fact that the money paid into court was not the identical money previously offered or tendered. And it has been insisted that, to keep a tender good, the party must keep the identical money offered ready to be paid over, on demand, or in a proper time, to pay the same in court. This principle, whatever may be the rule in relation to the tender of specific articles, can have no application to the tender of money, or that which the parties have treated as equivalent to the current coin of the country. It is to be borne in mind that a tender of money does not extinguish the debt. It simply bars the claim to damages and interest and the costs of an action, if the matter is prosecuted. By the tender, if refused, the money does not become the property of the person to whom the tender is made. Hence the person tendering is at liberty to use it as his own. All he is under obligation to do is to be ready at all times to pay the debt in current money, when requested."

The next contention of the appellant is that, conceding that Wisherd could enforce specific performance of the contract, the complainant, as his assignee or vendee, cannot. This contention is rested on the clause of the contract "that no assignment of the premises or of this contract shall be valid unless with the written consent of the first party and by the indorsement of the assignment hereon." This restraint upon the power of the purchaser to assign the contract unquestionably expired when the last purchase-money note fell due, and complete performance of the contract was tendered by the complainant. The complainant's right to a deed then became absolute. From that time the seller was a mere naked trustee of the legal title, and the purchaser or his vendee the equitable owner of the land. It was no longer any concern of the seller what the beneficial owner of the land did with it, for he no longer had any interest in it. The purchaser had the right to convey his equitable title, or assign his contract to whom he pleased, without asking Cheney's consent; and his vendee would succeed to all his rights. For the purpose of this case, it is immaterial that the sale or assignment was made before the complete performance of the contract by the purchaser or his vendee, for it was ratified and confirmed at all times thereafter, and at and after complete performance had been tendered by the complainant, when, if not before, it unquestionably became operative.

This provision of the contract was obviously intended to prevent the assignment of the same, while it was executory to persons who might not be able or well disposed to faithfully execute it. It was a provision which was inserted in the agreement to enable Cheney, the vendor, to control the selection of an assignee thereof so long as the agreement remained in part unperformed, or so long as he was interested in the choice of an assignee who had the requisite means and ability to do what remained to be done. Inasmuch, then, as the provision in question was only intended to secure the faithful performance of the agreement by the purchaser or his assignee, it would be both unreasonable and inequitable to hold that Cheney, the vendor, is privileged to take advantage of the provision, to avoid

performance on his part, after the entire amount of the purchase money has been promptly paid or tendered. We must assume, whatever may be the fact in this regard, that the provision against assigning the contract without the vendor's consent, was inserted therein for an honest and legitimate purpose; that is to say, for the purpose of securing the punctual payment of the purchase money, and a full compliance with other executory agreements, either by the original purchaser or by his assignee. Therefore, when it appears that that object has been accomplished, that the purchase money has been promptly paid or tendered to the vendor, and that nothing remains to be done but to execute a deed to the purchaser, the vendor cannot be heard to allege, as an excuse for not making a conveyance, that at a certain time the purchaser of the land assigned the contract of purchase without his consent. It would be trifling with justice to tolerate a defense of that character after the purchaser's engagements have each been performed in the time and manner stipulated in the contract of sale. Moreover, if Cheney intended to take advantage of the alleged breach of this provision of the contract, he should have made the fact known when the final payment for the land was tendered by the complainant. The evidence shows, however, that he did not decline to accept the final payment when the same was tendered, on the ground that the contract had been wrongfully assigned, and that he was under no obligation to accept payment from an assignee thereof. On the contrary, he refused the tender for the sole and only reason that the amount tendered was insufficient. Such an action on his part, we think, may well be regarded as a waiver of all objections to the assignment, as well as a waiver of the defense which he now undertakes to make.

The views which we have thus expressed on this branch of the case are the same, in substance, that we find stated in a little different form in the case of Wagner v. Cheney, 16 Neb. 202, 20 N. W. 222. It appears in that case that a suit was brought against the present appellant, Cheney, for specific performance, on a contract couched in the same language and containing the same provision against an assignment without his consent as that which figures in the present controversy. He attempted in that case, as in this, to avoid the execution of a deed after the terms of the purchase had been fully performed, on the ground that the contract had been assigned by the original purchaser without his consent. But the supreme court of Nebraska said, in substance, that as the contract did not provide in terms that a breach of the provision should work a forfeiture of the purchaser's interest in the land, or impose a penalty for its breach, no advantage could be taken of the breach, by the vendor, in a suit to compel the execution of a deed, after the terms of the purchase had been fully complied with by the purchaser or his assignee. It is also worthy of notice that the appellant, Cheney, is himself a lawyer, and that in the case of Cheney v. Bacon, 49 Fed. 305, which was formerly pending in this court, and in which Cheney acted as his own counsel, he invoked the decision in Wagner v. Cheney, supra, as containing a correct exposition of the law touching the scope and effect of that provision of the contract which is

now under consideration. We did not find it necessary in that case to consider the point, and therefore expressed no opinion thereon at that time. We think, therefore, that we may adopt the view expressed by the supreme court of Nebraska, for the reasons heretofore indicated, and apply the same to the decision of the case in hand, with the confident assurance that it is right in principle, and will promote the ends of justice.

It is objected that there is no sufficient evidence of the sale of the land and an assignment of the contract by Wisherd to the complainant, and that Wisherd should have been made a party defendant to the suit. The bill alleges that Wisherd sold the complainant his interest in the land, and made him a quitclaim deed therefor, and assigned to him the contract. Tested by the settled rules of equity pleading, the answer does not deny these allegations. Story, Eq. Pl. 852, 854; Woods v. Morrell, 1 Johns. Ch. 107; Reed v. Insurance Co., 36 N. J. Eq. 146, 153. But the sale is abundantly proved independently of the quitclaim deed. It is proved by the depositions of Wisherd and the complainant which are a part of the record in the case. The written declaration, under oath, of Wisherd and the complainant, that the sale was made, and that they desire that effect be given to it, is, in equity, as effectual to transfer Wisherd's equitable right in the property to the complainant as if the sale had been evidenced by the most formal written instrument, and entitles the complainant to the same equitable remedies against the appellant to perfect his title that Wisherd could have asserted if no sale had been made. Whether this sale was evidenced by a deed or an assignment of the contract, or rested on a parol agreement, is no concern of the appellant, so long as the parties to it are agreed that it was made, and have asserted the fact upon the record, in a mode that will estop them from asserting, at any time, the contrary against the appellant.

To the objection that Wisherd should have been made a party defendant, there are several answers. As we have seen, the fact of the assignment is not denied, but only its legal effect. It is absolute, and leaves no interest in the assignor. The objection, if good, was apparent on the face of the bill, and was not taken by plea or demurrer. Such an objection raised at the hearing is never regarded if a decree can be rendered without prejudice to the rights of the party objecting, or the absent party; and as we have seen in this case, on the state of the record, the rights of the appellant are as fully protected as if Wisherd was a party defendant. The modern codes of practice adopt the equity rules in relation to parties to suits. Under those codes, one suing as assignee of a chose in action, not assignable by statute, is required to make the assignor a party as plaintiff or defendant; but, notwithstanding this requirement, it is uniformly held that the assignor may be dispensed with as a party, where, by his deposition in the case or otherwise, he admits the fact of his assignment, and disclaims any interest in the controversy; and, where the assignment is absolute and unconditional, the objection that the assignor is not made a party is waived when not insisted upon by demurrer or answer. Nash, Pl. pp. 30, 43; Swan,

Pl. & Prac. 102, and note c; Newm. Pl. & Prac. 182, 214; Colyer's Adm'r v. Craig, 11 B. Mon. 73; Johnson v. Rankin, 3 Bibb, 87; Kellar's Ex'rs v. Beelor, 5 T. B. Mon. 575; Duvall v. Waggener, 2 B. Mon. 184.

It is next objected that the money tendered was not brought into court upon the filing of the bill. But it was tendered in the bill, and an offer made to bring it into court whenever the court should so direct, and this was sufficient. Cheney v. Libby, supra; Pom. Cont. § 361.

After Cheney began his actions of ejectment for the land, in 1894, he paid the taxes for one year, and he has a decree for the amount, with interest, which is all that need be said on that subject.

Finding no error in the record, the decree of the circuit court is, in all things, affirmed.