STANSBURY *et al. v.* EMBREY *et al.*

(*Jackson.* April Term, 1913.)

1. **PRINCIPAL AND AGENT.  Collection of note. Payment at bank.**

That a note is made payable at a particular bank, or at any bank, does not make the bank the owner's agent to receive payment, if the note is not placed by him with the bank. (*Post, p.* 107.)

Cases cited and approved:  Cheney v. Libby, 134 U. S., 68; Ward v. Smith, 7 Wall. (U. S.), 447; Hills v. Place, 48 N. Y., 520; Adams v. Hackensack, 44 N. J. Law, 638; Griswold v. Davis, 125 Tenn., 229.

2. **TENDER.  Notes.  Payment at bank.**

The making of a note payable at a named bank entitles the maker to tender payment there; a tender there being available to prevent a forfeiture and stop the running of interest, though the note be not at that bank when payment is tendered. (*Post, p.* 108.)

Cases cited and approved:  Cheney v. Libby, 134 U. S., 68; Cheney v. Bilby, 74 Fed., 52.

3. **TENDER.  Payment.**

As a rule, it is sufficient if a debtor tenders payment of a note on the due date at the place of payment, even though the creditor be absent; the debtor not being required to follow the creditor. (*Post, p.* 109.)

Cases cited and distinguished:  Southworth v. Smith, 7 Cush. (61 Mass.), 391; Hale v. Patton, 60 N. Y., 223.

4. **MORTGAGES.  Payment.  Sufficiency of tender.**

Where the maker of a note secured by a trust deed located the payee in another State, and informed him of his desire to pay the notes, which were then past due, and afterwards deposited funds in the bank used by the payee, there was

sufficient tender of payment to prevent the latter from matur-
ing the entire indebtedness for nonpayment, and foreclosing
the trust deed.   (*Post*, *p.* 110.)

5. **BILLS AND NOTES.   Place of payment.**
 The making of notes payable "at any bank" in a city authorized
    the maker to require the holder of the notes to make his
    election at what bank he would receive payment, and on
    failure to elect, the maker could elect to make payment at
    a certain bank, and give notice of his election to the holder.
    (*Post*, *p.* 110.)
 Cases cited and approved:   Brickett v. Spaulding, 33 Vt., 109;
    Barrett v. Eller, 51 N. C., 550.

FROM SHELBY.

Appeal from the Chancery Court of Shelby County to
the Court of Civil Appeals, and by *certiorari* from the
Court of Civil Appeals to the Supreme Court.—F. H.
HEISKELL, Chancellor.   Part One, 10th Division.

HENRY CRAFT, for plaintiffs.

G. J. McSPADDEN, for defendants.

MR. JUSTICE WILLIAMS delivered the opinion of the
Court.

The bill of complaint was filed to enjoin the defend-
ants from foreclosing a trust deed; a demurrer was
interposed by defendants and sustained by the chan-
cellor; an appeal was granted, in the exercise of the

court's discretion, and the cause heard by the court of civil appeals, which affirmed the chancellor's decree. The cause is before this court for review on *certiorari*.

On August 1, 1907, defendant Embrey conveyed to Hal Mitchell, colored, a tract of land in the State of Arkansas for a consideration of $12,000, no part of which was paid in cash. Twelve $1,000 notes were executed by the vendee, all made payable "at any bank in Memphis," the first maturing December 15, 1907, and the others on the 15th of each succeeding December until the last was paid. Mitchell at the same time executed a trust deed conveying the land to defendants Bartons, as trustees, to secure the payment of these purchase money notes; and, taking possession, Mitchell paid the notes maturing December 15, 1907, and December 15, 1908, but failed to pay in full the December 15, 1909, note. At the date of the filing of the bill (November 18, 1912) $94.15 of that note remained unpaid, and the notes maturing in 1910 and 1911 were in default as to payment; the total amount thus due at that time being, approximately, $2,900.

The trust deed contained a provision that if default occurred in the payment of any of the notes, then all of the indebtedness, at the election of the holder of the notes, should become due for the purpose of foreclosing the lien of the trust deed.

On October 24, 1912, Mitchell conveyed the land to complainant Stansbury for $2,000 cash and the assumption by Stansbury of the payment of the indebtedness due and to fall due; and on the 31st of October Stans-

bury sought Embrey for the purpose of paying him the amount then past due on the series of notes. Finding that Embrey was absent from Memphis, on a visit to Virginia, he wired Embrey at his temporary address, giving information of his purchase of Mitchell, his desire to pay the past-due notes and stop interest, and asking authority for making payment to the Bartons, trustees. On November 1st Stansbury received a reply from Embrey: "I will be home about fifteen *proximo*."

This reply not being satisfactory to Stansbury, he on the same day wrote Embrey a letter in which, after acknowledging receipt of the quoted telegram, he expressed his willingness to pay the amount referred to, to anyone in Memphis whom Embrey might name, or to send to Embrey in Virginia a certified check for same, and waiving a delivery of the paper until Embrey's return to Memphis. Not receiving a reply, on November 6th Stansbury went to the bank in Memphis where Embrey kept his bank account and deposited therein to Embrey's credit the full amount due on the then matured notes, and promptly notified, and had the bank to notify, Embrey of this fact.

Embrey had not up to this time exercised his option to declare the entire indebtedness due; but on November 9th he wrote Stansbury declining to accept the deposit, and saying that he was also notifying the bank. Complaining of Stansbury's trading with Mitchell without consultation with him (Embrey) he proceeded: "I, therefore, elect to declare the entire land debt due

November 15, 1912, and notify you that if not paid on or before that date I will advertise sale of the land under the trust deed."

The rule was laid down in *Lee* v. *Bank,* 124 Tenn., 582, 139 S. W., 690, that in order to prevent the acceleration of the maturity of that part of a total indebtedness not matured at the time, a tender of the portion matured under the contract's terms is sufficient, if made after default but before the creditor has exercised his option to declare the entire indebtedness due.

The position taken by complainant Stansbury in the bill of complaint, and on appeal, is that Embrey was obligated, on notice to him of Stansbury's readiness to pay, to make some suitable arrangement by which the notes could be paid in Memphis, failure and refusal to do which entitled Stansbury to pay the money into bank under the place of payment clause embodied in the several notes, "at any bank in Memphis."

It is replied, on the part of Embrey, that the deposit in bank did not constitute a payment.

The rule of law is clearly to the effect that making a note payable at bank—any bank or a particular bank—does not avail to make the bank the agent of the owner of the note to receive payment; the note itself not being lodged by him with the bank. *Cheney* v. *Libby,* 134 U. S., 68, 10 Sup. Ct., 498, 33 L. Ed., 824, 825; *Ward* v. *Smith,* 7 Wall. (U. S.), 447, 19 L. Ed. 207; *Hills* v. *Place,* 48 N. Y., 520, 8 Am. Rep., 568; *Adams* v. *Hackensack,* 44 N. J. Law, 638, 43 Am. Rep., 406; 7 Cyc. 1035. The principle is the same as that announced in our re-

cent case of *Griswold* v. *Davis,* 125 Tenn., 229, 141 S. W., 205.

It is then insisted by defendant Embrey that, since the deposit did not constitute a payment, it also failed of being a tender, that a tender cannot be made to a person who is not authorized to receive payment, and that payment and tender hang by the same thread, so that when one falls the other falls. In this there is a failure to distinguish. The making of a note payable at a named bank entitles the maker to resort to that bank to tender payment; and if the note be not there, the tender avails, nevertheless, to arrest the running of interest, to save a right or to prevent a forfeiture. *Cheney* v. *Libby,* supra; *Cheney* v. *Bilby,* 74 Fed., 52, 20 C. C. A., 291; 22 Cyc., 1555; 38 Cyc., 151, 152.

But it is argued in behalf of Stansbury that this rule as to tender only has application on a note's due date, and that in the present case all three of the notes in default had been so for long periods, that there rested no duty on the holder to keep them in bank or have them there on the date when it happened to suit the debtor to tender payment, and that a tender thus long after default should not be held to be of binding force on the creditor, who in this instance was absent from the State (carrying the notes with him), without any purpose to evade or defeat tender to him in person.

This case must turn, in our opinion, on the effect of Embrey's absence and the duty resting on him to leave, or provide on request of the debtor a place for payment.

The general rule is that if a creditor is thus absent, and the debtor does all in his power to make a tender on the due date, the creditor cannot afterwards object that no tender was made.  The debtor is not required to follow the creditor out of the State there to make tender.  28 Am. & Eng. Ency. Law (2 Ed.), 10, 23; 22 Cyc., 1554.

In *Southworth* v. *Smith,* 7 Cush. (61 Mass.), 391, it was held that if A., the purchaser of real estate at a sale on execution, when B., a purchaser of the debtor's right to redeem, attempts to make a tender of the money due, is absent from home by necessity and without any intention to evade a tender, and in consequence of such absence, and by the use of due diligence, B. is unable to find A., or any person authorized to act in his behalf, and is therefore prevented from making the tender seasonably, no forfeiture of the estate is thereby incurred, provided B. was prepared to make tender, and that it was not necessary that B. should leave the money where A. could control it.

In *Hale* v. *Patton,* 60 N. Y., 233, 19 Am. Rep., 168, a case involving the acceleration of mortgage notes, it was held that where, by the terms of a contract the principal becomes due at the option of the obligee, in case the interest remains unpaid for thirty days, in case no place of payment is specified, if the obligee is absent from the State at the termination of the thirty days, the debtor is not obliged to follow him, but readiness to pay within the State in that case will be as effectual as actual payment to save from acceleration.

It is urged, however, that these two cases are to be distinguished from the one at bar by the fact that in each the tender was, it is claimed, before a default had been made, while here it followed default.   But in *Southworth* v. *Smith* the effort to tender was within a period of redemption allowed by law, following a default, and in *Hale* v. *Patton,* the tender was within a contract period of grace following default.   Here the right to be preserved was one allowed so to be by law at any time before exercise by the holder of his option to accelerate.

When Stansbury located Embrey in Virginia, acquainted him with his desire to pay the past-due notes, and requested that a mode of payment be suggested or provided, he did all that any rule of law could reasonably require of him.   After that his deposit of the funds in the bank used as depository by Embrey should operate to defeat the after attempt of Embrey to declare the entire indebtedness mature and to foreclose the trust deed.

The notes were made payable at "any bank in Memphis," which provision, it seems, gave the debtor or maker the right, for tender and payment purposes, to call on the holder of the notes to make his election at what bank he would receive payment, or else, on failure, to make his (the debtor's) own election and give notice to the holder.   *Brickett* v. *Spaulding,* 33 Vt., 109; *Barrett* v. *Eller,* 51 N. C., 550.

When Embrey declined to name any other place or person to receive the proffered payment, we hold that

Stansbury v. Embrey.

the tender was properly made to the bank, and that thereafter there was no right in Embrey to declare the entire debt mature. We consider that the rule thus declared best comports with the convenience and safety of business men, to whom when diligent the law should point a mode of warding off foreclosures by debt-payment.

The writ of *certiorari* granted; decree of the court of civil appeals affirmed.