**WHITE v. DENNIS et al.  (No. 9210.)**

(Court of Civil Appeals of Texas. Ft. Worth Jan. 17, 1920. Rehearing Denied March 6, 1920.)

**1. Time ⬤⇒9(1)—In provision for forfeiture on failure to pay within ten days, due date excluded.**

Under an oil lease, providing for forfeiture if rentals were not paid within 10 days after due, rental due February 1st could be paid February 11th.

**2. Tender ⬤⇒16(2)—Formal tender unnecessary, in face of declaration that it will not be accepted.**

The right to an actual and a formal tender of money due is waived, when the debtor offers to pay, and is ready, willing, and able to do so, but is prevented from so doing, as where the party to whom the money is due expressly declares that he will not accept the tender, if made, or repudiates the contract.

**3. Mines and minerals ⬤⇒79(6) — Refusal of agent to receive payment waiver of formal tender.**

Where by the terms of an oil lease a bank was the agent of lessor to receive rentals, no

formal tender of the money was necessary to avoid a forfeiture of the lease, where the cashier of the bank refused to accept the rental when offered, especially where such refusal was induced by a statement theretofore made by the lessor to the effect that he considered the lease already forfeited.

Appeal from District Court, Young County; Wm. N. Bonner, Judge.

Action by W. A. Dennis and another against E. E. White. Judgment for plaintiffs, and defendant appeals. Reversed and remanded.

Ike A. Wynn, Glover C. Johnson, A. L. Green, and C. L. Morgan, all of Ft. Worth, and Marshall & King, of Graham, for appellant.

Miller & Miller, of Ft. Worth, and Arnold & Arnold, of Graham, for appellees.

DUNKLIN, J. On February 1, 1917, W. A. Dennis and wife executed and delivered to O. B. Colquitt and J. N. Graves an oil and gas lease of that date on 160 acres of land in Young county. By mesne conveyance, the lease on 120 acres of that tract was sold to E. E. White. W. A. Dennis and wife instituted this suit against White to cancel the lease on that tract for failure to pay rentals which fell due February 1, 1919, and from a judgment in favor of the plaintiffs, White has appealed.

By its terms the lease was made assignable in whole or in part. Among others, the lease contained the following provision:

"The party of the second part agrees to commence operations, drilling a well on said premises within one year from the date hereof, or pay rental at the rate of 50 cents per acre per year, while such commencement or operation for drilling a well is delayed. It is further agreed that if suit be instituted affecting said premises adverse to the interest of the second party hereunder, that thereupon the time for either the commencement or completion of a well, or for the payment of rental hereunder, shall be extended from date of filing such suit until termination hereof, and that rentals accruing during said litigation shall not be chargeable against said second party. Failure of second party to pay rental within 10 days after same becomes due (subject to exceptions herein stated) shall render this lease void: Provided, second party shall pay all rentals, if any, then accrued. All payments which may fall due under this lease may be made directly to the first party, or deposited to first party's credit in Beckham National Bank of Graham, state of Texas."

The trial was by the court without the aid of a jury. The defendant filed the following special plea:

"This defendant would show that the aforesaid provisions of said lease contemplated and

allowed payment of rentals at the rate of 50 cents per acre for the amount held by him to be made on or before February 11, 1919. This defendant would further show that, during the usual and customary banking hours observed by the said Beckham National Bank of Graham, Tex., he, acting through a duly qualified and authorized agent, offered to pay to said Beckham National Bank, of Graham, the sum of $60, which was the correct amount of said rentals due by him at said time, but that plaintiffs had theretofore instructed said Beckham National Bank not to accept for their account any of said rentals from this defendant, and that thereupon when said offer to pay said rentals was made, said Beckham National Bank refused to accept for the account of plaintiffs said sum of $60.

"This defendant would further show that on said February 11, 1919, at the time of said refusal by said Beckham National Bank, he was ready, willing, and able to pay said sum of $60, and that he would have done so had not said Beckham National Bank, acting upon the instructions theretofore given to it by plaintiffs refused to accept said sum; and defendant would further show that at all times since said February 11, 1919, he has been and still is ready, willing, and able to pay said rentals in the sum of $60; and he would further show that on, to wit, February 12, 1919, he did in fact deposit in said Beckham National Bank to the credit of plaintiffs herein, said rentals amounting to $60 which was the first time said Beckham National Bank would receive said rentals from this defendant; and defendant now offers and tenders said sum of $60 into court for the use and benefit of plaintiffs—all of which this defendant is now ready to verify."

In support of the plea, P. K. Deats, cashier of the Beckham National Bank, named in the lease as the depositary of the rentals, testified as follows:

"On the 11th day of February, Mr. Dennis came in and asked if there had been any money left there for him. I told him there had not been. That was possibly 2 or 3 o'clock in the afternoon. After that I called for Mr. White to tell him the lease was forfeited. I don't know where he was. I called for him at his residence here in Graham, and his wife said he was not there. I told her to tell him—we usually do those things, in order that if the money has been left anywhere we can collect it—and she asked if she could pay it; said she was willing to pay it; and I told her I didn't think there was any use of it, that Mr. Dennis said the lease was forfeited. I saw Mr. White the next day. No money had been paid in there for Dennis' benefit up to that time. Mr. White, the next day, deposited $60 to Dennis' credit. I told him just what I had told Mrs. White about the forfeit; that Mr. Dennis said it was too late. * * * "

Cross-examination:

"On the 11th day of February, when Mr. Dennis came in the bank, the bank was still open for business. When I told Mr. Dennis that no money had been deposited to his credit on the lease, I don't recall just what he did say; he said something about it should have been there, that the time was past. I don't recall what he said about accepting the rental. I don't recall that he advised me to accept or not accept it. We would have had to accept the deposit if it came. As to what he said about the forfeiture of the lease, I will say that, as well as I remember, he said the time was past for the lease money. He called on me that day to make an affidavit that no money had been deposited on or before the 1st of February, 1919. I don't remember the exact date of the affidavit; I made the affidavit along the lines he indicated. As to whether I advised Mrs. White immediately that Mr. Dennis had been in there, and that the lease was forfeited, that that was my view of it, I will say it wasn't my view. It was my information, from what Mr. Dennis had said. I didn't know anything about the contract, and didn't go to the records to see the contract. Mr. White did deposit the money there on the 12th of February. Mr. White carries a deposit in our bank. When Mrs. White offered to pay the money, she and Mr. White had funds in our bank subject to check in an amount sufficient to cover this rental or more. * * * It was in the afternoon, some time about 2 or 2:30 o'clock, that Mr. Dennis was in the bank. Our banking hours are until 4:30 in the afternoon. I don't recall whether he said for us not to accept any money after that time or not. He said the lease was forfeited, or words to that effect. He told me the money should have been paid before that date. I understood it should have been paid before February 1st. I talked to Mrs. White immediately after Mr. Dennis left. She asked me if she couldn't pay it, and I told her I didn't think there was any use in it, from what he had said. Dennis did not accept any of the money that was deposited there on that lease."

Mrs. E. E. White, wife of the defendant, testified as follows:

"I am the wife of the defendant in this case. On the 11th of February, 1919, I was at home here in Graham. On that date Mr. Deats phoned me, and told me about the Dennis lease, and said he wished to find Mr. White in a very great hurry. He said Mr. Dennis had been in there, and the lease was forfeited, and I assured him it had not been, inasmuch as Mr. White was very careful; and he said Mr. Dennis was there, and that he could now go out and sell it for many thousands of dollars. I says, 'Why couldn't I pay it?' and he said there was no use of it, because, if it had been a question of money, he would gladly have paid it himself. I had funds available then with which to have paid it. I would have paid it, but for what he said. I talked with Mr. White that evening over the phone."

The year referred to in the testimony just quoted was 1919, as shown by the uncontroverted proof; the plaintiff testifying that his claim of right of cancellation was the failure to pay the rental which was due February 1, 1919, as pleaded in his petition.

The trial judge did not file findings of fact

and conclusions of law separately from the judgment, but the judgment rendered contains recitals of findings of fact upon which it was predicated. One of the findings so recited was that "the rental due on February 1, 1919, was not paid as provided for in said lease on 120 acres of land above described." There was no finding upon the issue whether or not Mrs. White, acting for the defendant, was ready, willing, and able to pay the rental to the bank for the plaintiff on February 11, 1919, within the regular banking hours, as testified to by herself and the cashier, and whether or not she was prevented from making such payment by the statement made to the cashier by plaintiff Dennis on the same day, to the effect that he considered the lease already forfeited for nonpayment of such rental.

[1] We are of the opinion that under the terms of the lease the rental in question became due February 1, 1919, and that defendant had up to and including February 11, 1919, within which to pay the same; in other words, that the 10-day period after the said rental became due, within which defendant had the right to pay said rental, included February 11, 1919, and defendant was not in default until after that date. Hill v. Kerr, 78 Tex. 213, 14 S. W. 566; Halbert v. San Saba Springs Land & Live Stock Ass'n, 89 Tex. 230, 34 S. W. 639, 49 L. R. A. 193; Hunter v. Lanius, 82 Tex. 677, 18 S. W. 201; 38 Cyc. 317; Ætna Life Ins. Co. v. Wimberly, 102 Tex. 46, 112 S. W. 1038, 23 L. R. A. (N. S.) 759, 132 Am. St. Rep. 852.

[2] It seems to be well settled that the right to an actual and formal tender of the money due is waived when the debtor offers to pay, and is ready, willing, and able ·to do so, but is prevented from so doing, where the party to whom the money is due expressly declares that he will not accept the tender, if made, or repudiates the contract. Terrell v. Proctor, 172 S. W. 996; Texas Bank & Trust Co. v. Kelly, 202 S. W. 357; 38 Cyc. 135.

[3] The bank was by the terms of the lease made the agent of the plaintiffs to receive the rental, and if its cashier refused to accept the rental from Mrs. White when she offered to pay the same, such would amount to a tender that would prevent a forfeiture of the lease, especially if such refusal on the part of the cashier was induced by the statement theretofore made by plaintiff to the effect that he considered the lease already forfeited. This issue of tender, presented by the pleadings and apparently sustained by the evidence noted, does not seem to have been passed on by the trial judge, and, as it was a vital issue, we have reached the conclusion that the judgment should be reversed, and the cause remanded for another trial; and it is so ordered.